UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FRANKIE J. MONROE, | § | |
| **Plaintiff** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. C-05-412 |
| | § | |
| CORPUS CHRISTI INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| **Defendant** | § | |

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this lawsuit alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, et seq. She alleges that her employer, the Corpus Christi Independent School District ("CCISD"), discriminated against her on the basis of race and age as well as engaged retaliatory conduct. Pending is defendant's motion for summary judgment. (D.E. 16). Plaintiff has filed a response to this motion. (D.E. 17, 34).

## I.  JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Additionally, the parties consented to have a magistrate judge conduct all proceedings in this matter, including trial and final judgment pursuant to 28 U.S.C. § 636(c). (D.E. 5, ¶ 17); (D.E. 9).

## II.  FACTUAL BACKGROUND

The following undisputed facts are taken from the pleadings and exhibits on file and are construed in the light most favorable to plaintiff. Plaintiff, Frankie Monroe, a 54-year old African-American female is employed by defendant, CCISD, as a school teacher. (D.E. 1, at

¶ 5); (D.E. 16, at Ex. D).  She has been employed by defendant from 1986 to 1989 and then from 1996 to present.  (D.E. 36, at ¶ 36).  She currently holds the position of Resource Teacher at Ray High School.  Id.  During her employment with defendant, she applied for several administrative position within CCISD.  (D.E. 1, at ¶ 15); (D.E. 16, at 1).  At a July 7, 2006 hearing, plaintiff's attorney conceded that the two positions at issue in her lawsuit are: (1) an assistant principal position posted in June 2003; and (2) an assistant principal position originally posted in April 2004 and re-posted in June 2004.  See (D.E. 17, at ¶¶ 27, 29-30); (D.E. 16, at 6).

In connection with its June 2003 posting, defendant selected Melissa Naranjo and Laura Quiroz to fill the vacancies.  (D.E. 16, at Ex. B).  Ms. Naranjo and Ms. Quiroz are both Hispanic females who are younger than plaintiff.  Id.  Seven other candidates were chosen and assigned to fill assistant principal vacancies in connection with the June 2004 posting.  Id.  These individuals were assigned to their positions between August and September 2004.  Id.  Of the seven, four were Hispanic, two were African-American, and one was Caucasian.  Id.  Four of the seven were at least forty years old at the time of being hired; however, only one of the selected candidates was older than plaintiff.  Id.  Criselda Castillo, a Hispanic female, was selected on November 1, 2004 by defendant for an assistant principal position that was also sought by plaintiff.  (D.E. 36, at ¶ 43).

Defendant has established a multi-step selection process to be used in the hiring or promoting of individuals.  (D.E. 16, Aff. of Michael Briones, at 2).[1]  The first step in evaluating individual applications is to determine whether the applicant meets the position's minimum qualifications.  Id.  After all minimally qualified applicants have been identified, a three-member

---

[1] Michael Briones is the CCISD's Executive Director for Human Resources.  (D.E. 16, Briones Aff., at 1).

paper screening committee scores these applicants "according to the years of experience, training, performance, certifications, etc."[2]  Id.  Based on this scoring, the paper screening committee creates a descending order list of the qualified candidates, which is provided to the Assistant Superintendent, who determines how many of the candidates will be interviewed. (D.E. 17, at ¶ 33); see also (D.E. 16, Briones Aff., at 2).  In choosing which candidates to interview, it is the "practice that the top scoring candidates would be the ones that would be chosen to go to the next process, which is really to be interviewed."  (D.E. 17, Ex. B, Briones Dep. 9:5-8).  The Assistant Superintendent is not limited in the number of candidates that can be selected for interviews.  Id. at Briones Dep. 9:16-19.

Candidates selected to proceed to the interview stage are interviewed by a three-member interview committee selected by the campus principal with the vacancy.  Id. at Briones Dep. 17:17-25, 18:1-5.  The committee members each score the interviewees, which are then summarized and tabulated and sent to the Superintendent.  Id. at Briones Dep. 23:2-6.  The Superintendent makes the final recommendation to the Board of Trustees concerning which candidate should be hired to fill the position.  Id. at Briones Dep. 23:10-16.  Plaintiff was not selected for an interview for the June 2003, or June 2004 assistant principal vacancies.  (D.E. 17, at ¶ 28); (D.E. 34, at ¶ 5).

Over the years, plaintiff contacted several CCISD officials concerning her interest in securing a new position within the district, and her resultant frustration stemming from her inability to secure a new position.  See (D.E. 17, at Exs. D-H).  After not being selected for an

---

[2] The current evaluation process was put in place sometime in 2004.  (D.E. 17, Ex. B, Michael Briones Dep. 24:11-18, May 25, 2006).  The primary difference in the old system was that the campus principals with vacancies, not a paper screening committee, scored qualified applicants.  Id. at Briones Dep. 24:14-18.

interview in connection with defendant's June 2003 posting, on August 11, 2003, she sent an email to Mr. Briones concerning CCISD's decision not to offer her an interview.  (D.E. 17, at Ex. G); (D.E. 36, at ¶ 41).  On July 9, 2004, she once again contacted Mr. Briones concerning the decision not to grant her an interview.  (D.E. 17, at Ex. H); (D.E. 34, at ¶ 5).  She expressed concern that CCISD was engaging in unfair hiring practices expressly stating "[a]t this point I can only assume that I am not being given an opportunity because I am not in a click, or am not related to someone or simply that I am black."  (D.E. 17, at Ex. H).

Paper screening forms indicate that applicants were screened for the June 2004 posting on July 14, 2004.  See (D.E. 34, at Exs. A-C, F-G).  The Paper Screening Rating Result Form dated July 15, 2004 indicates that plaintiff received a score of 108 and was ranked 32 out of 38 candidates.  (D.E. 34, at Ex. E); (D.E. 35, at Ex. A).  LaTricia Johnson also received a score of 108, however unlike plaintiff, she was granted an interview and eventually offered an assistant principal position.[3]  (D.E. 34, at ¶ 6 & Ex. E); (D.E. 16, at Ex. B).  Wynette Johnson, who received a score of 107, was also granted an interview.  (D.E. 34, at ¶ 5).

### III.  PROCEDURAL BACKGROUND

On October 7, 2004, plaintiff filed a written charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") through the Corpus Christi Human Relations Commission ("THRC").  (D.E. 1, at ¶ 10); (D.E. 16, at 2).  Upon her request, the EEOC issued a Notice of Right to Sue pursuant to ADEA on June 3, 2005.  (D.E. 16, at Ex. F).  The Department

---

[3] In plaintiff's supplemental response, she claims that Wynette Johnson was sent on an interview in connection with the June 2004 posting, and that Ms. Johnson was later selected as an assistant principal.  (D.E. 34, at ¶ 5).  She further claims that LaTricia Johnson was provided an interview for the position, but does not provide whether or not Ms. Johnson was offered a job.  Id. at ¶ 6.  However, CCISD records indicate that LaTricia Johnson was assigned an Assistant Principal position on August 3, 2004, not Wynette Johnson.  (D.E. 16, at Ex. B).

of Justice, upon request, issued a Notice of Right to Sue pursuant to Title VII on June 17, 2005.

Id. at Ex. G.  Both notices informed her that if she wished to pursue her claims through a federal

civil action, it must be filed within 90 days of receipt of the notice.  Id. at Ex. F-G.

Plaintiff filed her original complaint on August 12, 2005.  (D.E. 1).  Defendant filed its

motion for summary judgment on May 15, 2006.  (D.E. 16).  It argues that plaintiff has failed to

exhaust her administrative remedies, some of her claims fall outside the applicable statutes of

limitations, she fails to establish a prima facie case of discrimination, and finally that it has

legitimate, nondiscriminatory reasons for its employment decisions.  Id. at 5-16.

Plaintiff filed a response to this motion on June 5, 2006.  (D.E. 17).  She then requested

leave of Court to file a supplemental response in opposition to the motion due to problems

encountered in her requests for discovery.  (D.E. 18).  On July 7, 2006, her motion for leave was

granted allowing her to file a supplemental response no later than July 17, 2006, and defendant

was ordered to produce all outstanding discovery by July 12, 2006.  (D.E. 30, at 1).  She filed her

supplemental response, in which, she argues that defendant employs a discriminatory selection

process through which "she was targeted and singled out."  (D.E. 34, at 4).  She points to

defendant's failure to produce "supporting documentation of how it ranked and selected Ms.

Naranjo and Ms. Castillo over Plaintiff" as evidence of its discrimination.  Id.  She also argues

that after she complained about her continued inability to obtain an interview, defendant deviated

from its process in selecting candidates for interviews, indicating a discriminatory practice and

retaliation against her.  Id.

On July 21, 2006, defendant filed its reply to plaintiff's supplemental response.  (D.E.

35).  It reasserts its argument that plaintiff's § 1981 claim is barred by the applicable statute of

limitations.  <u>Id.</u> at ¶ 7.  It further argues that plaintiff has the burden to produce sufficient evidence to support a jury return in her favor, and has failed to meet this burden.  <u>Id.</u> at ¶ 3.  It contends that it is not required to disprove her allegations, but rather it is her duty to produce affirmative evidence to support her claims "even where the evidence is likely to be within the possession of the defendant, as long as plaintiff has had a full opportunity to conduct discovery." <u>Id.</u> (citations omitted).  Concerning any alleged deviation from the selection process, it argues that "[p]laintiff has offered no evidence of retaliation by the District with these contentions, merely conjecture and speculation."  <u>Id.</u> at ¶ 9.  Finally, it argues that plaintiff has failed to show that the reasons given were a pretext for discrimination, and therefore its motion should be granted.  <u>Id.</u> at ¶ 11-12.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>Id.</u> at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  <u>Caboni v. Gen. Motors Corp.</u>, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  <u>Id.</u> Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as

would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  Caboni, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## V.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendant argues that plaintiff has failed to exhaust her administrative remedies, and accordingly, her claims should be dismissed as a matter of law.  (D.E. 16, at 6-7).  Plaintiff claims that she has exhausted her administrative remedies.  (D.E. 1, at ¶ 13).

In support of its argument, defendant claims that "Texas law requires an aggrieved party to first exhaust all remedies provided under the statutory administrative scheme if the subject matter (1) concerns the administration of school laws, and (2) involves questions of fact."  (D.E. 16, at 6) (citing Jones v. Dallas Indep. Sch. Dist., 872 S.W.2d 294, 296 (Tex. App. 1994)).  It argues that issues concerning employment disputes are generally considered to involve questions of fact requiring exhaustion of state administrative remedies.  Id. at 6-7 (citing Barrientos v. Ysleta Indep. Sch. Dist., 881 S.W.2d 159, 160 (Tex. App. 1994).

However, defendant seemingly misstates the application of this requirement to this case. The Supreme Court of Texas noted that "employees' Title 42 and constitutional claims are not affected by the doctrine of exhaustion of administrative remedies such that they must be originally considered by the TEA.  Because of the nature of such claims, prior resort to the administrative process is not usually required."  Texas Educ. Agency v. Cypress-Fairbanks I.S.D., 830 S.W.2d 88, 91 n.3 (Tex. 1992) (citing McNeese v. Board of Educ., Cmty. Unit Sch. Dist. 187, 373 U.S. 668, 670-71 (1963); Damico v. California, 389 U.S. 416 (1967) (per curiam)).  Several Texas appellate courts have recognized that federal constitutional and statutory claims are exempted from this administrative exhaustion requirement (including case

8

law cited by defendant). <u>Gibson v. Waco Indep. Sch. Dist.</u>, 971 S.W.2d 199, 202-03 (Tex. App. 1998) (holding "a party need not seek administrative relief before filing a suit which raises constitutional challenges to actions or decisions of a school board") (citation omitted); <u>Jones</u>, 872 S.W.2d at 296 (noting that Texas provides for immediate access to the courts where "[a] plaintiff raises Title 42 or constitutional claims"); <u>Mitchison v. Houston Indep. Sch. Dist.</u>, 803 S.W.2d 769, 773 (Tex. App. 1991) ("Exhaustion of state administrative remedies is not a prerequisite to an action under 42 U.S.C. § 1983") (citing <u>Patsy v. Bd. of Regents of State of Fla.</u>, 457 U.S. 496 (1982)).

In <u>Vela v. Waco Independent School District</u>, 69 S.W.3d 695 (Tex. App. 2002), the appellate court addressed the tension between the requirement that disputes arising out of the administration of school laws must be exhausted through the Commissioner of Education versus the administrative exhaustion requirement pursuant to the Texas Commission on Human Rights Act ("CHRA"), which requires that employment discrimination filings with the EEOC are to be initiated through the THRC. <u>Id.</u> at 698-702. It stated that it was unable to find any Texas case law addressing "whether a school district employee's *discrimination* claim under the CHRA involves the administration of school laws, such that the employee must exhaust the administrative remedies in the Education Code before a trial court has jurisdiction over the CHRA claim." <u>Id.</u> at 701 (italics in original). The purpose of requiring a plaintiff to exhaust administrative remedies was to encourage parties to resolve their disputes without resorting to litigation. <u>Id.</u> at 702. Based on its analysis of the two statutory schemes, it held that the plaintiff was not required to exhaust remedies pursuant to both statutory schemes, but rather

"[a]dministrative review under the CHRA is 'mandatory' and 'exclusive' when a school district employee asserts a claim under that Act."  Id.

The Fifth Circuit has acknowledged that Texas courts do not require exhaustion of administrative remedies where the agency is unable to redress plaintiff's harm.  See McQueen v. Bullock, 907 F.2d 1544, 1547-48 (5th Cir. 1990).  Here, plaintiff filed a charge of discrimination with the EEOC through the THRC in compliance with the provisions of the CHRA.  See (D.E. 16, at Ex. D).  She alleges violations of her constitutional and federal statutory rights to be free from employment discrimination on the basis of her race or age as well as to be free from retaliation for engaging in protected activity.  She was not required to exhaust her claims before the Commissioner of Education, but rather she appropriately exhausted her administrative remedies pursuant to the requirements of the CHRA.  Defendant's request to dismiss plaintiff's claims for failure to exhaust administrative remedies is DENIED.

## VI.  APPLICABLE STATUTES OF LIMITATIONS

Defendant argues that any claims raised by plaintiff that occurred prior to December 11, 2003 are untimely pursuant to Title VII.  (D.E. 16, at 6).  It asserts that the only job at issue here is the June 2004 posting seeking assistant principals.  Id.  Plaintiff argues that despite Title VII's limitations period, her claims are timely pursuant to § 1981, and therefore the relevant time period is two years prior to the filing of her action, August 12, 2005.  (D.E. 17, at ¶ 48).  In connection with the June 2003 posting, the successful applicants were assigned to their positions on August 12, 2003.  (D.E. 16, at Ex. B).

In Texas, a Title VII plaintiff must file a charge of discrimination within 300 days of learning of the conduct alleged.  42 U.S.C. § 2000e-5(e)(1); Huckabay v. Moore, 142 F.3d 233,

238 (5th Cir. 1998).  Events that occurred more than 300 days before plaintiff filed her charge of discrimination with the EEOC cannot be the basis of claims for relief pursuant to Title VII. Plaintiff's charge of discrimination was filed with the EEOC on October 7, 2004.  (D.E. 1, at ¶ 10); (D.E. 16, at 2).  The 300 day limitations period also applies to ADEA claims.  Tyler v. Union Oil Co., 304 F.3d 379, 384 (5th Cir. 2002) (citing 29 U.S.C. § 626(d)).  Thus, any alleged acts of discrimination that occurred prior to December 11, 2003 are barred by the limitations period.  Accordingly, the only viable claim pursuant to Title VII and the ADEA is defendant's alleged discriminatory and retaliatory acts against plaintiff in connection with the June 2004 posting.

Defendant also challenges the timeliness of plaintiff's claims pursuant to § 1981. (D.E. 35, at ¶ 7).  Section 1981 does not contain a statute of limitations, and therefore, federal courts must apply the most "appropriate or analogous state statute of limitations."  Goodman v. Lukens Steel Co., 482 U.S. 656, 660 (1987) (citations omitted).  "Civil rights actions brought under 42 U.S.C. §[] 1981 ... are deemed analogous to Texas tort actions, and therefore, the applicable limitations period is two years."  Helton v. Clements, 832 F.2d 332, 334 (5th Cir. 1987); accord National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, 40 F.3d 698, 713 n.22 (5th Cir. 1994).

The Texas code provides that the action must be filed "not later than two years after the day the cause of action accrues."  Tex. Civ. Prac. & Rem. Code § 16.003 (emphasis added).  A plaintiff's claim accrues when he or she knows or reasonably should know that the discriminatory act has occurred.  Merrill v. S. Methodist Univ., 806 F.2d 600, 605 (5th Cir.

11

1986) ("This Circuit has also consistently focused on the date that plaintiff knew of the discriminatory *act*.") (italics in original) (citation omitted).

Here, plaintiff alleges that she was unlawfully discriminated against when defendant selected Melissa Naranjo, a Hispanic female younger than her, on August 12, 2003.  See (D.E. 17, at 3); (D.E. 16, at Ex. B).  She further alleges that defendant illegally discriminated against her when it filled assistant principal jobs in connection with its June 2004 posting.  These candidates were assigned to their new positions between August and November 2004.  See (D.E. 17, at 3-4); (D.E. 16, at Ex. B); (D.E. 36, at ¶ 43).  The two-year statute of limitations began to run when plaintiff knew or reasonably should have known that a discriminatory act, which here is August 12, 2003.  She filed this action on August 12, 2005.  (D.E. 1).  Accordingly, her claims of racial discrimination involving the June 2003 and June 2004 postings are timely filed pursuant to § 1981.

## VII.  ANALYSIS OF PLAINTIFF'S CLAIMS

**A.      Plaintiff's Title VII Race Discrimination Claim For The June 2004 Positions.**

Plaintiff claims that defendant unlawfully discriminated against her on the basis of race when it failed to promote her to an assistant principal position in response to defendant's June 2004 posting.  (D.E. 1. at ¶¶ 19-23); (D.E. 17, at ¶¶ 29-30).

Under Title VII , an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...."  42 U.S.C. § 2000e-2(a)(1); see also Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005).  In addressing a Title VII claim of racial discrimination, a federal court must apply the burden-shifting framework outlined by the Supreme Court in McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973).  E.g., Abarca v. Metro. Transit Auth., 404 F.3d 938, 941

(5th Cir. 2005) (per curiam); Johnson v. Louisiana, 351 F.3d 616, 621 (5th Cir. 2003).  Under

this framework, the burden lies initially with the plaintiff to "raise a genuine issue of material

fact on each element of his prima facie case."  Johnson, 351 F.3d at 621.  A plaintiff's

establishment of a prima facie case creates a rebuttable presumption of discrimination.  Id.  "The

ultimate burden of persuasion remains with the plaintiff."  Id. at 622.  If defendant provides a

legitimate, nondiscriminatory reason for its employment decision, then "the inference of

discrimination raised by the *prima facie* case disappears."  Walton v. Bisco Indus., Inc., 119 F.3d

368, 370 (5th Cir. 1997).  The burden shifts back to the plaintiff who must show that defendant's

legitimate, nondiscriminatory reason "was simply a pretext for discrimination."  Abarca, 404

F.3d at 941.  Finally, "Plaintiff ... must prove, by a preponderance of the evidence, both that the

defendant's articulated reason is false and that the defendant intentionally discriminated."

Walton, 119 F.3d at 370 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993);

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-55 (1981)).

**1. Plaintiff's Failure To Promote Prima Facie Case.**

To establish a prima facie case in connection with a failure to promote claim, a plaintiff

must demonstrate that: (1) she is a member of a protected class; (2) she sought a position for

which she was qualified; (3) she suffered an adverse employment decision; and (4) her employer

continued to seek or promoted applicants with the plaintiff's qualifications.  Davis v. Dallas Area

Rapid Transit, 383 F.3d 309, 317 (5th Cir. 2004) (citing Celestine v. Petroleos de Venezuella

SA, 266 F.3d 343, 354-55 (5th Cir. 2001)).  The Fifth Circuit, however, has enunciated other,

slightly different fourth steps regarding the prima facie test.  Manning v. Chevron Chem. Co.,

332 F.3d 874, 881 (5th Cir. 2003) (plaintiff "was replaced by someone outside the protected class"); Pratt v. City of Houston, Tex., 247 F.3d 601, 606 n.2 (5th Cir. 2001) ("either the position was filled by someone not in the protected class, or the person was not promoted because of his race").

Here, it is undisputed that plaintiff satisfies the first three prongs of the test.  She is African-American, a member of a protected class; she was a qualified for the June 2004 assistant principal position; and she was not hired for the position.  (D.E. 1, at ¶ 5); (D.E. 16, at Ex. A, B, D).  The focus, therefore, is on the fourth prong: whether she was treated differently from other similarly situated applicants.

The Fifth Circuit recognized that its case law provides different factors in the fourth step for consideration.  See Nieto v. L&H Packaging Co., 108 F.3d 621, 624 n.7 (5th Cir. 2001).  It noted that recent cases supported the "view that replacement by a member of the same protected class precludes the establishment of a prima facie case."  Id. (citations omitted).  It criticized the disposition in these cases for failing to take into consideration earlier circuit precedent holding that the fact that a position was filled with an individual from plaintiff's same protected class did not in itself negate the possibility of discriminatory intent.  Id.  It further noted that this earlier precedent is still controlling law in the circuit.  Id.

Therefore, in order to satisfy the requirements of the fourth step, plaintiff must show that she was replaced by someone outside her protected class, she was treated less favorably than other similarly situated applicants, or she was subjected to adverse treatment due to her status as a member of a protected class.  Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998); Hornsby v. Conoco, Inc., 777 F.2d 243, 246-47 (5th Cir. 1985); see also Glover-Dorsey v.

<u>Univ. of Tex. Med. Branch at Galveston, Tex.</u>, 147 F. Supp.2d 656, 663-64 (S.D. Tex. 2001) (footnote omitted).

The June 2004 job was filled by seven candidates between August and September 2004, and one candidate, Criselda Castillo, was assigned in November 1, 2004.  (D.E. 16, at Ex. B); (D.E. 36, at ¶ 43).  Among the eight individuals, two of them like plaintiff were African-American.  <u>See</u> (D.E. 16, at Ex. B).  Defendant argues that plaintiff's claim "is clearly defeated by the fact that at least two of the positions were filled by African-Americans, who are in the same protected class as Plaintiff."  <u>Id.</u> at 9.  However, this fact alone does not establish whether plaintiff has established her prima facie case.  It must be determined whether she was treated less favorably than others similarly situated, or whether she was subjected to adverse treatment due to her race.  <u>Urbano</u>, 138 F.3d at 206; <u>Hornsby</u>, 777 F.2d at 246-47.

Plaintiff argues that she was treated differently from other candidates applying for the June 2004 position.  (D.E. 17, at ¶ 37).  She specifically claims that she was more qualified than Ms. Castillo, who was offered the position.  <u>Id.</u> at Aff. of Frankie Monroe, at 3.  She stated that:

> My qualifications in comparison to Ms. Castillo's were far superior than her.... I had over 17 years classroom teaching experience whereas Ms. Castillo had only 3 or 4 years of classroom teaching experience.  Secondly, my evaluations as a teacher for the District during this time was well established and my performance evaluations for the 3 years preceding my application for assistant principal position was rated overall from 'proficient' to 'exceptional quality'.  What's more, in 2002, I received both my mid-management certification and Superintendent certification.  Ms. Castillo did not hold a Superintendent certification.
> As a classroom teacher, I have a wide range of administrative experiences in the educational field as well.  Even so, Ms. Castillo's background does not show the same range or depth of experience and educational backgrounds as mine.

(D.E. 34, at Aff. of Frankie Monroe, at 2).  Defendant argues that she has failed to show that she was clearly more qualified than the other candidates.  (D.E. 16, at 10-11).

The Fifth Circuit has held that "[u]nless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question."  E.E.O.C. v. La. Office of Cmty. Servs., 47 F.3d 1438, 1445 (5th Cir. 1995).  The weight of any "disparit[y] in qualifications must be of such a weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  Deines v. Tex. Dep't of Protective & Regulatory Servs., 164 F.3d 277, 280-281 (5th Cir. 1999).  While work experience is an element to be considered in determining which candidate it more qualified, an "'attempt to equate years served with superior qualifications ... [is] unpersuasive.'"  Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir. 1996) (citation omitted).

Plaintiff has not shown she was clearly more qualified than Ms. Castillo.  Indeed, records indicated that Ms. Castillo scored well-above plaintiff in the paper screening process.  (D.E. 35, at Ex. A) (Paper Screening Results Form shows Ms. Castillo received a score of 178 and was ranked 16 out of 70 while plaintiff only received a score of 142 and was ranked 65 out of 70). Plaintiff cannot simply rely on her own subjective belief that she is the superior candidate, she must establish evidence to support such an assertion.  See Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 313 (5th Cir. 1999) (per curiam).

Based on the undisputed facts in the record, plaintiff has failed to meet her burden of demonstrating a prima facie case of discrimination because she has not shown that she was

treated differently than others similarly situated on the basis of race or that she was subjected to adverse treatment on the basis of race.

### 2. Defendant's Legitimate, Nondiscriminatory Reason For Its Action.

Assuming arguendo that plaintiff was able to establish a prima facie case of discrimination, it is necessary to address whether defendant has a legitimate, nondiscriminatory reason for its employment decision.  In this case, defendant stated a legitimate, nondiscriminatory reason for its employment action, namely, that defendant employs a neutral selection process where candidates are "evaluated and selected solely on the basis of their qualifications."  (D.E. 16, at 12).

Next, plaintiff she must raise a genuine issue of material fact that defendant's legitimate, nondiscriminatory reason was merely pretextual, and that discrimination was the true reason for the employment action.  See Abarca, 404 F.3d at 941.  In establishing pretext, a "plaintiff cannot succeed by proving only that the defendant's proffered reason is pretextual....  Rather, 'a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown both that the reason was false, *and* that discrimination was the real reason.'"  Walton, 119 F.3d at 370 (citations omitted) (italics in original).  To make a showing of pretext sufficient to survive summary judgment, a plaintiff "'must put forward evidence rebutting *each* of the nondiscriminatory reasons the employer articulates.'"  Ramirez v. Landry's Seafood Inn & Oyster Bar, 280 F.3d 576, 577 (5th Cir. 2002) (italics in original) (citation omitted).  Moreover, a plaintiff's subjective belief that her race motivated the alleged adverse employment action is insufficient.  Little v. Republic Ref. Co., 924 F.2d 93, 96 (5th Cir. 1991) (noting that the Fifth Circuit is "'not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief'")

(citation omitted); accord Lawrence, 163 F.3d at 313.  A plaintiff must offer evidence "to suggest that impermissible discrimination underlies" the adverse employment action.  Walton, 119 F.3d at 372.  The evidence offered "to rebut the employer's reasons [must be] substantial, [otherwise] a jury cannot reasonably infer discriminatory intent."  Id.

Plaintiff asserts that defendant's failure to provide a paper screening form for Ms. Castillo and herself is confirmation that she was targeted by school officials in its selection of assistant principals.  (D.E. 34, at 4).  While defendant's inability to produce the documents is troubling, it does not prove discriminatory intent.[4]  Additionally, defendant did provide a Paper Screening Results List dated August 12, 2004, which reflects that Ms. Castillo received a score of 178 and was ranked 16 out of 70 while plaintiff only received a score of 142 and was ranked 65 out of 70.  (D.E. 35, at Ex. A).

Plaintiff also argues that two to the candidates who were afforded an opportunity to interview for the June 2004 assistant principal job possessed either the same or a lower paper screening score as she had.  (D.E. 34, at ¶¶ 5-6).  She asserts that this deviation from the normal process by which individuals are granted interviews based on their paper screening score is indicative of discrimination.  Id.  These two interviewees are Wynette Johnson and LaTricia Johnson.  Id.  However, she fails to state that the difference between her score and Wynette Johnson's score is one point.  Id. at Ex. E.  Additionally, both Wynette Johnson and LaTricia

---

[4] Plaintiff does not allege any spoliation in the unavailability of the documents.  On the record before the Court, it is unclear if such documents never existed, or what happened to them if they did exist.  There is no evidence that any loss or destruction of such documents was done in bad faith.  See Ratliff v. City of Gainesville, Tex., 256 F.3d 355, 363-64 (5th Cir. 2001).

Johnson are African-American.[5]  Finally, defendant's practice of interviewing candidates in

sequential order based on their paper screening score is a customary practice, not mandatory

CCISD policy.  See (D.E. 17, Ex. B, Briones Dep. 9:5-8).

Plaintiff has failed to provide any evidence that defendant's actions were motivated by

intentional discrimination on the basis of race.  "[C]onclusory allegations, speculation, and

unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."  Douglass v.

United Servs. Auto. Ass'n, 65 F.3d 452, 459 (5th Cir. 1995) (citation omitted).  Accordingly,

defendant's motion for summary judgment as to plaintiff's Title VII race discrimination claim is

GRANTED.

**B.      Analysis Section 1981 Employment Discrimination Claims.**

Plaintiff asserts that her two race discrimination claims are actionable pursuant to § 1981.

(D.E. 1, at ¶¶ 33-36); (D.E. 17, at ¶ 48).  Section 1981 claims "are governed by the same

evidentiary framework applicable to claims of employment discrimination brought under Title

VII."  LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 n.2 (1996) (citing Patterson v. McLean

Credit Union, 491 U.S. 164, 186 (1989)).

**1.  Plaintiff's Section 1981 Race Discrimination Claim For The 2004 Position.**

Accordingly, plaintiff fails to meet her burden concerning her claim arising out of the

June 2004 posting for the same reasons it failed pursuant to the Title VII analysis already

---

[5] Indeed, in her June 9, 2006 email to Mr. Briones, she posited two reasons why she
may not have been interviewed and promoted other than her race.  Specifically, she decried the
lack of opportunities stemmed from her failure to be in the right clique or nepotism.  (D.E. 17,
at Ex. H).  Without addressing the merits of either assertion, if true, neither would be barred by
Title VII.

19

addressed.  Thus, defendant's motion for summary judgment as to plaintiff's June 2004 § 1981

race discrimination claim is GRANTED.

### 2.  Plaintiff's Section 1981 Race Discrimination Claim For The 2003 Positions.

However, it must be determined whether plaintiff's remaining § 1981 claim survives

summary judgment.  She alleges that defendant intentionally discriminated against her in

connection with its June 2003 posting.  (D.E. 17, at ¶ 27).  Defendant selected Melissa Naranjo

and Laura Quiroz to fill the vacancies.  (D.E. 16, at Ex. B).  They are both Hispanic females.  Id.

### A.  Plaintiff's Failure To Promote Prima Facie Case.

Once again, it is undisputed that plaintiff meets the first three prongs.  She is a member of

a protected class, she was qualified for the June 2003 assistant principal position, and she was

not hired for the position.  (D.E. 1, at ¶ 5); (D.E. 16, at Exs. A-B).  The focus, therefore, is on the

fourth prong: whether she was treated differently from other similarly situated applicants.  She

must show that someone outside her protected class was hired, or she was treated less favorably

from other similarly situated applicants, or show she was otherwise subject to adverse treatment

due to her race.  Urbano, 138 F.3d at 206; Hornsby, 777 F.2d at 246-47.

Here, the June 2003 assistant principal position was filled by individuals outside of her

protected class, namely two Hispanic females.  (D.E. 16, at Ex. B).  Plaintiff argues that she was

treated different from other candidates applying for the June 2003 position because she was more

qualified.  (D.E. 17, at ¶ 37).  She specifically claims that she was more qualified than Ms.

Naranjo, who was given a position.  Id. at Monroe Aff., at 3.  While plaintiff's assertion that she

was more qualified than Ms. Naranjo is not overwhelmingly persuasive, she has shown that the

position was filled by individuals outside her protected class.

Based on the undisputed facts in the record, plaintiff has met her burden demonstrating a prima facie case of discrimination.

### B.  Defendant's Legitimate, Nondiscriminatory Reason For Its Action.

Next, it is necessary to address whether defendant has a legitimate, nondiscriminatory reason for its employment decision.  In this case, defendant stated a legitimate, nondiscriminatory reason for its employment action, namely, that defendant employs a neutral selection process where candidates are "evaluated and selected solely on the basis of their qualifications."  (D.E. 16, at 12).

Plaintiff failed to provide any evidence that defendant's actions were motivated by intentional discrimination on the basis of race.  She points to defendant's failure to provide a copy of the paper screening form as evidence that defendant engaged in racial discrimination. (D.E. 34, at 4).  While defendant's inability to produce the supporting paperwork is troubling, it is not evidence of discrimination.  A review of the qualifications fails to establish that plaintiff was clearly more qualified than Ms. Naranjo for the position.  See Deines, 164 F.3d at 280-281 (holding the weight of any disparity in qualifications "must be of such a weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question"); see also Nichols, 81 F.3d at 42 ("'attempt to equate years served with superior qualifications ... [is] unpersuasive.'").

Plaintiff has failed to raise a genuine issue of material fact that defendant's legitimate, nondiscriminatory reason was merely pretextual, and that discrimination was the true reason for the employment action.[6]  See Abarca, 404 F.3d at 941.  As the Fifth Circuit has explained

_____

[6] Again, in her June 9, 2006 email to Mr. Briones, she posited two reasons why she may not have been interviewed and promoted other than her race. (D.E. 17, at Ex. H).  Without

"conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." Douglass, 65 F.3d at 459.  Accordingly, defendant's motion for summary judgment as to plaintiff's § 1981 discrimination claim for the June 2003 position is GRANTED.

## C.    Plaintiff's Retaliation Claim.

Plaintiff claims that defendant engaged in retaliatory conduct prohibited pursuant to Title VII and § 1981.  (D.E. 1, at ¶¶ 28-36).  She alleges that defendant retaliated against her because she sent an email to Mr. Briones concerning her belief that defendant was engaging in unfair employment practices.  (D.E. 34, at ¶ 5).  The Fifth Circuit analyzes "claims of intentional discrimination, which include racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981, under the same rubric of analysis." Raggs v. Miss. Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002) (citations omitted).

The anti-retaliation provision of Title VII specifically provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Moreover, it seeks to advance the goals of its substantive protection against workplace discrimination by "preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." Burlington N. & Santa Fe Ry. v. White, _ U.S. _, 126 S. Ct. 2405, 2412 (2006).

To make out a prima facie case of retaliation, a plaintiff must show "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and

---

addressing the merits of either assertion, if true, neither would be barred by § 1981.

(3) that a casual link existed between the protected activity and the adverse action." Gee v.

Principi, 289 F.3d 342, 345 (5th Cir. 2002) (citing Raggs, 278 F.3d at 471); see also Perez v.

Region 20 Educ. Serv. Ctr., 307 F.3d 318, 325 (5th Cir. 2002).  Once a plaintiff meets her prima

facie burden in a retaliation claim, the Court employs the same burden-shifting approach as used

in a discrimination claim.  See Perez, 307 F.3d at 325.

        The Supreme Court recently noted that "the anti-retaliation provision ... is not limited to

discriminatory actions that affect the terms and conditions of employment." Burlington N. &

Santa Fe Ry., 126 S. Ct. at 2412-13 (citation omitted).  It held that "[t]he scope of the anti-

retaliation provision extends beyond workplace-related or employment-related retaliatory acts

and harm." Id. at 2414.  It cautioned, however, that not all retaliatory conduct will fall within the

provision, but rather "a plaintiff must show that a reasonable employee would have found the

challenged action materially adverse, 'which in this context means it well might have 'dissuaded

a reasonable worker from making or supporting a charge of discrimination.'" Id. at 2415

(citation omitted).

        **1.  Plaintiff's Prima Facie Case Of Retaliation.**

        Plaintiff has established the first two prongs of a prima facie case of retaliation.  On July

9, 2004, she sent an email to Mr. Briones concerning her inability to obtain interviews for

various positions she had applied for within CCISD.  (D.E. 17, at Ex. H).  She stated "[a]t this

point I can only assume that I am not being given an opportunity because I am not in a click, or

am not related to someone or simply that I am black." Id.  Candidates were screened for the June

2004 assistant principal job on July 14, 2004.  See (D.E. 34, at Exs. A-C, F-G).  One candidate

that received the same score as plaintiff was granted an interview and eventually offered a

position as assistant principal.  (D.E. 34, at ¶ 6 & Ex. E); (D.E. 16, at Ex. B).  Another candidate

who received a lower score than plaintiff, one point lower, was also granted an interview.  (D.E.

34, at ¶ 5).  Thus, plaintiff engaged in a protected activity, lodging a complaint concerning race

discrimination, and suffered an adverse employment action, i.e., not receiving an interview

which precluded her from obtaining a promotion.

Therefore, the focus is on the third prong, which requires plaintiff show "a casual link

existed between the protected activity and the adverse action."  Gee, 289 F.3d at 345.  The casual

link requirement is not as stringent as the "but for" standard required for an ultimate finding of

retaliation.  Raggs, 278 F.3d at 471 (citation omitted).  "The plaintiff 'need not prove that her

protected activity was the sole factor motivating the employer's challenged decision in order to

establish the 'causal link' element of a prima facie case.'"  Gee, 289 F.3d at 345 (citation

omitted).

Defendant argues that:

> [A] mere flurry of electronic correspondence between Mr. Briones
> and Plaintiff authored both prior to and after the date when the
> paper screening rating came out, wherein Plaintiff expressed
> frustration with the selection process is hardly more than a mere
> scintilla of evidence that Mr. Briones and the District orchestrated
> a plot involving the entire human resources department to make
> certain that Plaintiff's frustrations were made public and that she
> was then intentionally denied any interviews.

(D.E. 35, at ¶ 9).  This argument is persuasive.

Plaintiff has not provided any evidence linking Mr. Briones with the Superintendent's

decision not to select her for an interview.  Mr. Briones does not select or designate the

candidates that will be interviewed.  (D.E. 17, Ex. B, Briones Dep. 8:6-13).  The circumstantial

evidence presented by plaintiff to establish a casual link between her complaint and denial of an

interview is likewise uncompelling.  Her evidence concerning defendant's slight deviation in its practice to interview candidates in descending order based on candidate's paper screening score does not provide a sufficient basis to show a link between her complaint and defendant's denial to interview.  The difference in the three candidate's scores is <u>de minimis</u>.  Additionally, though defendant routinely followed the practice of interviewing in descending order, deviations of this practice ( not policy) is not indicative of the retaliation that plaintiff alleges.  <u>Id.</u> at Briones Dep. 9:5-15.  Furthermore, the two candidates identified by plaintiff are both African-American.

Accordingly, plaintiff has failed to meet her burden of demonstrating a prima facie case of retaliation because she has not demonstrated a casual connection between her complaint, and defendant's decision not to offer her an interview.

### 2.  Defendant's Legitimate, Nondiscriminatory Reason For Its Action.

Assuming arguendo that plaintiff was able to establish a prima facie case of discrimination, she nonetheless has failed to raise a genuine issue of material fact that defendant's legitimate, nondiscriminatory reason was merely pretextual, and that discrimination was the true reason for the employment action.  <u>See</u> <u>Abarca</u>, 404 F.3d at 941.

Defendant stated a legitimate, nondiscriminatory reason for its employment action, namely, that it engages in equal employment practices through a neutral selection process through which the most qualified candidates are selected.  (D.E. 16, at 12); (D.E. 35, at ¶ 11).

Plaintiff has not made a showing of pretext sufficient to survive summary judgment, as she has not provided evidence showing that defendant's legitimate, nondiscriminatory reason, is false, or that defendant's actions were motivated by discriminatory reasons.  <u>See</u> <u>Walton</u>, 119 F.3d at 370.  Moreover, "conclusory allegations, speculation, and unsubstantiated assertions are

inadequate to satisfy the nonmovant's burden." Douglass, 65 F.3d at 459.  Accordingly,

defendant's motion for summary judgment as to plaintiff's retaliation claims is GRANTED.

**D.        Plaintiff's Age Discrimination In Employment Act Claim.**

Plaintiff argues that defendant illegally discriminated against her on the basis of age.

(D.E. 1, at ¶¶ 24-27).  The only claim at issue here is the June 2004 posting because her other

claim is time barred.  See infra Part VI.

The Fifth Circuit has established that "[u]nder the ADEA, it is unlawful for an employer

'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's age.'"  Machinchick v. PB Power, Inc., 398 F.3d 345, 349-50 (5th

Cir. 2005) (citing 29 U.S.C. § 623(a)(1)).  The Fifth Circuit addressed the analysis of an ADEA

claim in Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004), explaining that it

represents a merger of the approaches used in McDonnell Douglas, and Price Waterhouse v.

Hopkins, 490 U.S. 228 (1989).

To make out an ADEA case, plaintiff must first demonstrate a prima facie case of

discrimination.  Defendant then must articulate a legitimate, nondiscriminatory reason for its

decision to terminate plaintiff.  If defendant meets its burden of production, plaintiff must then

offer sufficient evidence showing either: (1) defendant's reason is not true, but is instead a

pretext for discrimination; or (2) defendant's reason, while true, is only one of the reasons for its

conduct, and another motivating factor is plaintiff's protected characteristic.  Rachid, 376 F.3d at

312.  "If a plaintiff demonstrates that age was a motivating factor in the employment decision, it

then falls to the defendant to prove 'that the same adverse employment decision would have been

made regardless of discriminatory animus.  If the employer fails to carry this burden, plaintiff

prevails.'"  Id. (citations omitted).

### 1.  Plaintiff's Prima Facie Case Of Age Discrimination.

In order to make out a prima facie case of discrimination on a failure to hire claim, a

plaintiff must show: (1) she is a member of the protected class; (2) she sought and was qualified

for the position; (3) she was rejected for the position; and (4) the employer hired someone from

outside her protected class or replaced by someone younger or otherwise discriminated on the

basis of age.  Rachid, 376 F.3d at 309 (citations omitted); see also Davis, 383 F.3d at 317.  It is

undisputed that plaintiff was 52 years old and qualified for the position when she applied.  She

was not hired and the individuals hired for the position were approximately 13 to 25 years

younger.  Accordingly, she has made out a prima facie case of age discrimination.

### 2.  Defendant's Legitimate, Nondiscriminatory Reason For Its Action.

Again, it is necessary to address whether defendant has a legitimate, nondiscriminatory

reason for its employment decision.  In this case, defendant stated a legitimate,

nondiscriminatory reason for its employment action, namely, that defendant employs a neutral

selection process where candidates are "evaluated and selected solely on the basis of their

qualifications."  (D.E. 16, at 12).

Plaintiff argues that this reason is pretextual as one of the candidates, Ms. Castillo, did

not have the same extensive experience as she possessed.  However, she has not shown that she

was clearly more qualified.  Records indicated that Ms. Castillo scored well-above plaintiff.

(D.E. 35, at Ex. A) (Paper Screening Results Form shows Ms. Castillo received a score of 178

and was ranked 16 out of 70 while plaintiff only received a score of 142 and was ranked 65 out

of 70).  She also has failed to provide any support for argument that she is entitled to show the alleged discrimination pursuant to the motivating factor test.

In sum, plaintiff has not presented evidence that would allow a jury to conclude that defendant's legitimate, nondiscriminatory reason was pretextual.  She has not met her burden. Accordingly, defendant's motion for summary judgment as to plaintiff's age discrimination claim is GRANTED.

## VIII. CONCLUSION

Based on the foregoing analysis, defendant's motion for summary judgment, (D.E. 16), is GRANTED as to all of plaintiff's claims.

ORDERED this 26th day of July 2006.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE